**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENNETH GANNAWAY, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT `1:18-cv-00644` |
| COMENITY CAPITAL BANK, | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES, KENNETH GANNAWAY, by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, COMENITY CAPITAL BANK, as follows:

### NATURE OF THE ACTION

1.     This is an action brought by a consumer seeking redress for violation(s) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

### JURISDICTION AND VENUE

2.     Subject matter jurisdiction exists over the Telephone Consumer Protection Act claim(s) under 28 U.S.C. §§ 1331 and 1337.

3.     Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims took place in the Northern District of Illinois.

### PARTIES

4.     KENNETH GANNAWAY ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 904 Logan Court, Monticello, Illinois 61856.

1

5.      COMENITY CAPITAL BANK ("Defendant") operates as an industrial bank and issues credit cards for retailers. The company also underwrites credit programs on behalf of its partners including North America's retail brands. The company was formerly known as World Financial Capital Bank and changed its name to Comenity Capital Bank in October, 2012. The company was founded in 2003 and is based in Salt Lake City, Utah. Comenity Capital Bank operates as a subsidiary of Alliance Data Systems Corporation.

## FACTUAL ALLEGATIONS

6.      Plaintiff obtained a credit card ("subject account") issued by Defendant.

7.      Upon information and belief, Plaintiff provided Defendant with his cellular telephone number ending in 2889 at the time he applied for the subject account.

8.      At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 2889.

9.      Plaintiff made various charges on the subject account, accruing a balance ("subject debt").

10.     In February, 2016, as result of unforeseen loss of income, Plaintiff defaulted on the subject account.

11.     In February, 2016, Defendant began placing collection calls to Plaintiff in an effort to collect the subject debt.

12.     In late-February, 2016, Plaintiff answered a collection call from Defendant, Plaintiff advised the Defendant representative of his unforeseen loss of income, his inability to pay, and requested payment arrangements. Plaintiff's request for payment arrangements was declined. Plaintiff requested that they stop calling.

13.     When Plaintiff answered the aforementioned collection call from Defendant, he was greeted by a pause, click and dead air before being connected to a live representative.

14. Specifically, there was an approximate three second pause between the time Plaintiff said "hello," and the time that a live representative introduced them self.

15. Plaintiff's demand that Defendant cease calls to his cellular phone fell on deaf ears and Defendant continued to place collection calls to Plaintiff's cellular telephone.

16. In total, Defendant placed no less than 60 collection calls to Plaintiff's cellular telephone after he asked that the calls cease, including but not limited to calls on the following dates:

17. Upon information and belief, Defendant placed the aforementioned collection calls to Plaintiff's cellular telephone using a predictive dialing system, an automated telephone dialing system that is commonly used in the credit servicing industry to collect credit card debt.

18. At all times relevant, Plaintiff was financially responsible for his cellular telephone equipment and services.

### DAMAGES

19. Defendant's collection calls have severely disrupted Plaintiff's everyday life and overall well-being.

20. Defendant's collection calls have resulted in intrusion and occupation of Plaintiff's cellular services, thus impeding receipt of other calls.

21. Defendant's collection calls have resulted in unnecessary depletion of Plaintiff's cellular battery requiring him to incur electricity charges to recharge his cellular telephone.

22. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, loss of subscribed minutes, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the

distraction caused by the phone calls, decreased work productivity, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

23. Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek counsel to file this action to compel Defendant to stop its unlawful conduct.

### COUNT I – VIOLATION(S) OF THE TELEPHONE CONSUMER PROTECTION ACT

24. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

25. Defendant placed or caused to be placed non-emergency calls, including but not limited to the aforementioned collection calls, to Plaintiff's cellular telephone utilizing an automatic telephone dialing system ("ATDS") without Plaintiff's consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

26. In a 2003 declaratory ruling the Federal Communications Commission ("FCC") concluded that equipment which has the capacity to "store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers" qualifies as an ATDS under the statute. 18 F.C.C.R. 14014, 14091-93 (2003).

27. In 2012, the FCC stated that a predictive dialer included "any equipment that has the specified capacity to generate numbers and dial them without human intervention

4

regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 F.C.C.R. at 15392 n. 5 (2012).

28.     In its Order, the FCC "reiterate[d] that predictive dialers, as previously described by the commission, satisfy the TCPA's definition of an 'autodialer.'" *Id*.

29.     Upon information and belief, based on the lack of prompt human response during the collection call Plaintiff answered, Defendant employed a predictive dialing system to place collection calls to Plaintiff's cellular telephone.

30.     Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live representative once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

31.     Defendant violated the Telephone Consumer Protection Act by placing no less than 60 phone calls to Plaintiff's cellular telephone from February, 2016 through the present day utilizing an automated telephone dialing system without Plaintiff's consent.

32.     As pled above, any prior consent, if any, was revoked by Plaintiff in late-February, 2016 during a telephone call with Defendant.

33.     As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular telephone.

34.     Upon information and belief, Defendant has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular telephones.

35.     Upon information and belief, Defendant knew its collection practices were in violation of the Telephone Consumer Protection Act, yet continued to employ them to increase profits at Plaintiff's expense.

36.     Defendant acted through its agents, employees, and/or representatives at all times relevant.

5

37.     As a result of Defendant's violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to receive no less than $500.00 in statutory damages, for each and every violation.

38.     As a result of Defendant's *knowing and willful violations* of 47 U.S.C. § 227 et seq., Plaintiff is entitled to receive no less than $1,500.00 in statutory damages, for each and every violation.

WHEREFORE, Plaintiff requests the following relief:

a.      find that Defendant violated the Telephone Consumer Protection Act;

b.      enjoin Defendant from placing any further calls to Plaintiff's cellular telephone in the future;

c.      award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and

d.      grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

January 29, 2018                                        Respectfully submitted,

                                                       */s/ Joseph Scott Davidson*

                                                       Joseph Scott Davidson
                                                       Mohammed Omar Badwan
                                                       **SULAIMAN LAW GROUP, LTD.**
                                                       2500 South Highland Avenue
                                                       Suite 200
                                                       Lombard, Illinois 60148
                                                       +1 630-575-8181
                                                       jdavidson@sulaimanlaw.com
                                                       mbadwan@sulaimanlaw.com

                                                       *Counsel for Kenneth Gannaway*